UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Irina Assur,                     :
          Plaintiff,             :
                                 :
     v.                          :     File No. 2:06-CV-239
                                 :
Edward Adrian, Jessica           :
Porter, Christopher              :
Winters, Central Vermont         :
Medical Center, Roseanne         :
Palmer, Helen Spring,            :
Rick Theken, Daria Mason,        :
          Defendants.            :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 13, 20, 23 and 35)

Plaintiff Irina Assur, proceeding *pro se*, brings this action alleging that the defendants have defamed her and violated her constitutional rights.  Her claims arise out of her employment as a nurse at Central Vermont Medical Center ("CVMC"), and subsequent disciplinary proceedings brought against her by Vermont's Office of Professional Regulation ("OPR").  The parties report that those proceedings have not yet concluded.

Defendants CVMC, Palmer, Spring, Theken and Mason (collectively "hospital defendants") have moved for judgment on the pleadings, primarily arguing that most of Assur's claims fall outside the applicable statutes of limitations.  Defendants Adrian, Porter and Winter

(collectively "State defendants") move to dismiss on the basis of judicial immunity, prosecutorial immunity and/or official capacity immunity.  The State defendants also request, in the alternative, that the Court stay portions of the case until the disciplinary proceedings being brought against Assur have concluded.  For the reasons set forth below, I recommend that the hospital defendants' motion be DENIED without prejudice, and the State defendants' motion to dismiss be GRANTED.

<u>Factual Background</u>

For purposes of the pending motions, the facts alleged in the complaint will be accepted as true.  From September 3, 1998 through June 6, 2002, Assur worked as a registered nurse at CVMC.  During her first two years, "charge nurses" twice instructed her to violate nursing practice.  The complaint does not set forth the nature of these instructions, but in a subsequent filing Assur states that she was ordered to administer medication without a doctor's order.  (Paper 24 at 15).

In January 2000, Assur was diagnosed with life-threatening cancer.  She subsequently raised concerns about radiation from computers in her workplace, and

specifically "EMF radiation."  As a result of these
concerns, Director of Inpatient Services Roseanne Palmer
asked Assur to attend a meeting with a hospital
administrator.  During this meeting, Assur was informed
that an expert had evaluated the x-rays being emitted by
the hospital's computer monitors.  Assur responded that
her concerns were about EMF radiation, not x-ray
radiation.  The complaint does not state the hospital's
response, or whether there was a response, on the issue
of EMF radiation.

Beginning in 1999, Palmer approached Assur with
"numerous vague, wrongful, or specious allegations that
did not even involve Plaintiff."[1]  Assur discussed these
matters with Palmer, provided her version of the facts,
and assumed the issues were settled.  On or about
December 5, 2001, Assur was informed by Palmer that she
would be receiving a written warning for alleged
misconduct.  Assur claims that this violated CVMC policy,
since the hospital's policy allegedly required a verbal
warning prior to the issuance of a written warning.

---

[1]  The complaint does not discuss these allegations in detail, except to
the extent that the same or similar allegations became part of the State's
disciplinary action against her.  The specifics of the State's allegations
are discussed below.

Assur later obtained Palmer's notes, which revealed that Palmer had been sending "defamatory notes" to Helen Spring, and had enlisted Spring and others "into a tacit agreement to conspire with unlawful retaliation against Plaintiff."  Assur also claims that Palmer failed to incorporate Assur's facts into her investigation, and had instead created "false facts originating from Palmer and not originating from evidence."

In mid-December, 2001, in the presence of CVMC Human Resources Vice President Rick Theken, Assur confronted Palmer.  When Assur accused Palmer of failing to investigate, Palmer allegedly stated that "she did not have to investigate because she already knew the truth." Palmer then informed Assur that if she received any additional complaints, Assur would be fired.

On January 2, 2002, Assur delivered a letter to Theken complaining about Palmer's conduct.  In response, Theken stated that he did not believe one of the hospital's supervisors would act in such a manner.  On January 3, 2002, Assur was "coerced under false pretenses by Theken into attending an abusive two hour 'disciplinary' session."  During this meeting, Palmer

4

allegedly "launched a defamatory attack on Plaintiff," providing "unsupported, false, and specious facts to justify her emotional derogatory 'name calling'."

On or about January 17, 2002, Assur filed a request to grieve the hospital's disciplinary actions.  As part of the grievance process, Assur presented Bob O'Donnell, CVMC's former Human Resources Manager, with a written list of questions for Palmer to answer.  Palmer never provided answers, and subsequently withdrew all but one allegation.

On or about March 20, 2002, Assur requested a meeting with Spring and others.  At this meeting, Spring informed Assur that she was sending a report to the Vermont State Board of Nursing ("the Board") and was requiring that Assur attend a "refresher course."  On March 28, 2002, Assur received a letter from Spring notifying her that a report had been submitted to the Board.

Assur's grievance was heard on April 16, 2002.  The grievance panel ruled in Assur's favor.  Thereafter, Palmer allegedly continued to "harass and annoy" Assur by threatening that to seek a reversal of the panel's

decision.  Feeling that her workplace had become intolerable, Assur obtained other employment and resigned from CVMC on June 6, 2002.

On December 9, 2003, Assur received a Specification of Charges being brought against her by Vermont's Office of Professional Regulation.  This proceeding is ongoing, and the prosecutor in the case is defendant Edward Adrian, Esq.  The charges being brought against Assur include: incorrectly hanging an IV; inappropriately suggesting to a patient that the patient's chest pain may be attributed to childhood sexual abuse; dropping a Demerol pill and failing to ensure that the patient received the pill; informing a patient that she was dying when the patient and her family were unaware of this fact; and failure to answer patient call lights.

The charges further allege that on or about April 21, 2001, Assur left one patient with an unlocked bed and covered in feces, failed to clean up a second patient's room, and left a third patient with EKG leads on and a dirty "Johnny."  On June 21, 2001, a patient's son allegedly had to assist his mother with six bouts of diarrhea because Assur was on the telephone or in

conversation with others.  On February 26, 2002, Assur allegedly failed to administer morphine to a terminal patient after the morphine had been ordered by a respiratory therapist.  On March 10, 2002, she reportedly gave toast to a "liquid diet only" patient without consulting a physician.  In total, the charges identify approximately 17 incidents as grounds for discipline.

Assur claims that by publishing these charges, Adrian and OPR Director Jessica Porter furthered a conspiracy by CVMC staff.  She alleges that in November, 2002, she provided information to an OPR investigator but the information was ignored.  Assur contends that a full investigation would have resulted in no charges being brought.

On December 18, 2003, Assur received a copy of the State's investigative report.  This report revealed that CVMC, Palmer, Spring, Theken and defendant Daria Mason were the primary sources of information supporting the allegations in the Specification of Charges.  Assur claims that the facts provided to the State were essentially the same as the charges that Palmer had chosen to withdraw prior to the grievance hearing.  She

also claims that patient record would have proven the charges false, but that no such records were provided to the investigator.

In April 2004, Adrian allegedly refused to obtain these patient records.  During a telephone conference with Assur in September 2005, he alleged stated that such records "would not help his case."  When presented with a subpoena from Assur in April 2004, Mason allegedly refused to provide patient records citing "lack of 'applicable patient waivers.'"

On or about April 11, 2005, Assur asked defendant Christopher Winters, the Board's hearing officer, to issue subpoenas on her behalf.  Adrian submitted a written opposition, and on September 8, 2005, Winters denied the request.  Assur now claims that Winter was improperly acting in a dual capacity at that time, as he was allegedly the hearing officer and the newly-appointed director of OPR.

The complaint brings six separate causes of action. Count I alleges defamation by defendants Porter, Adrian, CVMC, Palmer, Spring, Theken and Mason.  Count II claims retaliation by the hospital defendants in violation of

Vermont's Whistleblower Act.  Count III claims that the
hospital defendants, Adrian and Winters wrongfully
prevented Assur from obtaining subpoenas, thus allegedly
violating a protected right under the First Amendment.
Count IV alleges a conspiracy among defendants Adrian,
Porter, Spring, Theken and Mason in violation of Assur's
equal protection rights.  Assur's equal protection claim
is based, in part, on the allegation that she is "a
member of a protected class, for exercising a protected
right."  Count V alleges equal protection and due process
violations.  Finally, Count VI claims intentional
infliction of emotional distress.  For relief, Assur
seeks an injunction on further defamatory publications,
as well as compensatory and punitive damages.

<u>Discussion</u>

I.  <u>Applicable Standard</u>

     Pending before the Court are the hospital
defendants' Rule 12(c) motion for judgment on the
pleadings, and the State defendants' Rule 12(b)(6) motion
to dismiss.  The standard for reviewing these motions is
the same.  <u>See</u> <u>Patel v. Contemporary Classics of Beverly
Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001).  The Court must

9

"accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005); Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999). The Court must then determine whether "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support her claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). In evaluating the allegations in the amended complaint, the Court remains mindful of the plaintiff's *pro se* status, and interprets her allegations to raise the strongest arguments that they suggest. See Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)); McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

II.  <u>Motion for Judgment on the Pleadings</u>

The hospital defendants argue that most of the claims in Assur's complaint are untimely.  Assur filed her complaint on December 4, 2006.  She was employed at CVMC from September 3, 1998 through June 6, 2002.  The OPR's Specification of Charges is dated December 2, 2003. Because Assur's dates of employment and the publication of the charges against her all occurred over three years prior to filing of the complaint, the hospital defendants claim that five of her six counts are barred by the applicable statutes of limitations.[2]

Under Vermont law, 12 V.S.A. § 512(3), causes of action for libel or slander have a three year statute of limitations.  This same statute applies to claims of intentional infliction of emotional distress.  <u>See</u> <u>Fitzgerald v. Congleton</u>, 155 Vt. 283, 291 (1990) (damages resulting from emotional distress are injuries "to the person" under 12 V.S.A. § 512(4)).  Vermont's whistleblower protection law, 21 V.S.A. § 507, has no limitations period, but the defendants argue that three

---

[2]  The hospital defendants did not initially argue against the timeliness of Count III, presumably because this Count relates to the Board's refusal to issue subpoenas.  However, to the extent that Assur's claims in Count III pertain to her work at CVMC, the hospital defendants now argue that those claims are barred as well.  (Paper 25 at 5).

11

years applies because "the nature of the harm is controlling."  (Paper 13 at 4) (citations omitted). Assur has not contested this claim.  With respect to Assur's federal claims, these too are governed by Vermont's three-year statute for personal injury torts. See Wallace v. Kato, 127 S. Ct. 1091, 1094 (2007). Accordingly, the hospital defendants argue that a three-year limitations period applies to most of Assur's claims.

In response to the hospital defendants' motion, Assur states that she did not receive notice of the OPR's formal charges against her until December 9, 2003.  She did not obtain the investigative notes revealing the hospital defendants' involvement until December 19, 2003. The formal charges were her first notice of defamation by the OPR, and the investigative notes showed "additional publication" of defamatory statements by the hospital defendants.  (Paper 24 at 2).  Therefore, Assur argues, her December 4, 2006 filing was timely.

In their reply memorandum, the hospital defendants point to Assur's allegation that she spoke with an OPR investigator in November, 2002.  In paragraph 81 of the

12

complaint, Assur states that she "provided the investigator, in November 2002, both orally and in writing, the correct facts relating to the allegations in order to assist the investigative committee in making a proper determination." (Paper 1-3 at 9). The hospital defendants contend that this allegation shows Assur's knowledge of their participation in the OPR's investigation prior to December, 2003. Assur maintains that she had no such knowledge, as the investigator did not reveal any specifics about the information provided by hospital staff.

Under Vermont law, "a cause of action is generally said to accrue upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery." Agency of Natural Resources v. Towns, 168 Vt. 449, 452 (1998) (internal quotations and citations omitted). The Vermont Supreme Court has chosen to apply the "discovery rule" to defamation claims. Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 85 (2002). The hospital defendants have not contested

the application of Vermont's general discovery rule to
all of Assur's claims.

Based upon the facts alleged in the complaint, and
assuming that the allegations against Assur were indeed
defamatory or otherwise damaging, any claims discovered
after December 4, 2003 are not time-barred.  Assur was,
of course, aware that hospital personnel had made
allegations against her prior to her receipt of the
State's charges.  However, the Specification of Charges
allegedly included "new and additional publication of
defamation."  (Paper 24 at 2).  The ways in which the
charges in the OPR document differ from previous
allegations, other than fact that they were newly
published, is not clear from the current record.  The
record also fails to establish whether Assur could have
discovered the "new and additional publication" prior to
December 4, 2003 "[t]hrough the exercise of reasonable
care and diligence."  Dulude, 174 Vt. at 400.

Making all necessary inferences in the plaintiff's
favor, the Court should accept Assur's representations
about the nature and timing of her discovery.  Because
this alleged discovery did not occur until after December

14

4, 2003, Assur's claims arising out of OPR's investigation and publication of charges should not be dismissed as untimely.  Further factual development may show that the hospital defendants' publications either were, or should have been, known prior to December 4, 2003.  Nonetheless, on the current record, dismissal based upon the statute of limitations is not warranted.

In addition to the injuries arising out of the state disciplinary process, Assur makes claims of defamation and other harmful conduct that occurred during her period of employment at CVMC.  While these claims appear to be time-barred, Assur asks the Court to equitably toll the limitations period.  In support of her position, Assur cites her active involvement in the state licensing process, the defendants' unwillingness to divulge patient records, and her poor physical and mental health.  The defendants have not responded to this argument.

The Vermont Supreme Court has held that equitable tolling is only applicable "when the defendant actively misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit, or the plaintiff timely raised the precise claim in the wrong

forum." <u>Town of Victory v. State</u>, 174 Vt. 539, 541 (2002). Assur claims that the first condition has been met because the defendants have repeatedly failed to produce "evidence of exculpatory and impeachment value." (Paper 29 at 4). However, the lack of such evidence did not prevent Assur from filing the instant action in 2006.

With respect to the second condition, Assur claims that she has "actively and mistakenly sought to resolve the matter within the context of [the] State licensing proceeding, which is an inappropriate forum for resolution of defamation and IIED claims." <u>Id.</u> at 5. Based upon the current record, the Court cannot discern whether Assur did, in fact, attempt to raise her defamation and IIED claims in the administrative proceeding. If she did, the doctrine of equitable tolling might apply. Therefore, the Court should refrain from ruling on the equitable tolling issue at this time.[3]

The hospital defendants' final argument is that

---

[3]  The Court acknowledges that the plaintiff bears the burden of showing that she is entitled to equitable tolling. <u>See</u> <u>Pace v. DeGuglielmo</u>, 125 S. Ct. 1807, 1814 (2005). Given Assur's *pro se* status, and considering that this case is still in the earliest stages, the Court should accept her representation that she tried to raise her claims in the state proceedings. However, if Assur wishes to maintain her equitable tolling argument throughout this case, she will eventually be required to provide evidence in support of her claim.

16

Assur's First Amendment claim in Count III fails to state
a claim.  Their argument, in its entirety, is that "[n]o
facts are alleged, particularly as to these moving
defendants to meet the requirements of a claim for
violation of her First Amendment rights."  This
conclusory statement, unsupported by either specific
factual references or relevant law, is plainly
insufficient to support dismissal of a substantive claim.

     For the reasons set forth above, I recommend that
the hospital defendants' motion for judgment on the
pleadings be DENIED without prejudice.  This ruling
allows for the possibility that, upon a more developed
factual record, some or all of Assur's claims may be
dismissed as untimely.

III.  <u>Motion to Dismiss</u>

     The State defendants have moved to dismiss, arguing
that they are protected by judicial immunity,
prosecutorial immunity, and/or qualified immunity.  At
the time of the events in question, defendant Jessica
Porter was Director of OPR, defendant Adrian was the
prosecutor responsible for bringing cases before the
Board of Nursing, and defendant Winters was an attorney

assigned to act as a hearing officer.  Assur claims that
in the course of her prosecution, these defendants
participated in her defamation, caused her emotional
distress and violated her constitutional rights.

As discussed above, the OPR filed its Specification
of Charges on December 2, 2003.  In September, 2005,
Assur asked Winters to issue subpoenas.  Adrian objected,
and Winters denied Assur's request.  Assur appealed to
the Vermont Superior Court, and on February 9, 2006,
Judge Toor affirmed Winters' decision.  Assur then
appealed to the Vermont Supreme Court, which reversed
Judge Toor's ruling in part and remanded for further
specification.  The Superior Court has assigned the case
to Judge Toor, and the parties report that there has been
no further action by the state court.  The defendants
further inform the Court that the administrative
proceeding has been stayed pending a decision by the
state court on Assur's motion to compel.

Each of the State defendants is entitled to absolute
immunity for their respective roles in Assur's
prosecution.  First, defendant Adrian is protected by
absolute prosecutorial immunity.  Assur claims that

Adrian's decision to bring charges was wrongful, and that once the proceeding was underway he declined to obtain evidence that might be helpful to her case.  Assur also objects to Adrian's actions in opposing her request for subpoenas, and claims that Adrian's actions amount to participation in a conspiracy.  Accepting Assur's allegations of Adrian's conduct as true, it is clear that each of Adrian's actions were taken in his role as a prosecutor preparing and presenting his case for the State.

"Prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process."  Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (internal quotation marks and citations omitted).  The Supreme Court has stated that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273-74

(1993) (noting that those acts undertaken "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made"); Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) (commenting that the Supreme Court "has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line") (quoting Buckley)); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (stating that the official "is also [absolutely] immune for conduct in preparing for [initiating a prosecution or presenting a case for trial]; for example, evaluating and organizing evidence for presentation at trial or to a grand jury").

Assur attacks not only Adrian's actions, but also his motivation.  As she alleges in her complaint, "with gross negligence and willful misconduct, [Adrian] agreed to unlawfully conspire with the CVMC defendants."  (Paper 1-3 at 14).  A prosecutor is protected by absolute immunity from a § 1983 action seeking damages "for virtually all acts, regardless of motivation, associated

with his function as an advocate." <u>Dory v. Ryan</u>, 25 F.3d
81, 83 (2d Cir. 1994).  Even conspiratorial motives are
protected.  "[F]undamentally, since absolute immunity
spares the official any scrutiny of his motives, an
allegation that an act was done pursuant to a conspiracy
has no greater effect than an allegation that it was done
in bad faith or with malice, neither of which defeats a
claim of absolute immunity." <u>Dorman v. Higgins</u>, 821 F.2d
133, 139 (2d Cir. 1987).  Consequently, Assur's claims
against Adrian for actions taken in his role as a
prosecutor are barred.

Defendant Winters, as the hearing officer, is
protected by absolute judicial immunity.  The primary
claim against Winters is that he wrongfully denied
Assur's request for subpoenas.  Assur also alleges
Winters' actions, including his alleged failure to give
her adequate notice, deprived her of "ever having a
hearing at a meaningful time and in a meaningful manner."
(Paper 1-3 at 15, 16).

The doctrine of judicial immunity was originally
created to shield judges from liability for acts
performed in their judicial capacities. <u>Mireles v. Waco</u>,

21

502 U.S. 9, 11-12 (1991).  The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption."  Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 489 (E.D.N.Y. 1998) (internal quotations and citation omitted).  "The cloak of immunity is not pierced by allegations of bad faith or malice."  Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997).  The doctrine of judicial immunity is overcome only when (1) the action is not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction.  Mireles, 502 U.S. at 11-12.

The doctrine of quasi-judicial immunity extends immunity to administrative officials performing discretionary acts of a judicial nature.  See Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Butz v. Economou, 438 U.S. 478, 513 (1978); Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988).  Indeed, courts have held that state hearing officers who exercise independent quasi-judicial powers are entitled to absolute judicial immunity.  See,

e.g., O'Neal v. Mississippi Board of Nursing, 113 F.3d
62, 66 (5th Cir. 1997) (absolute immunity protected
members of state licensing board who conducted
adjudicatory nursing license revocation hearings);
Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996)
(state personnel review board members were absolutely
immune from monetary relief with respect to their
adjudicatory functions), cert. denied, 520 U.S. 1267
(1997); Gyadu v. Workers' Compensation Commission, 930 F.
Supp. 738 (D. Conn. 1996) (state workers' compensation
commissioner entitled to absolute immunity), aff'd, 129
F.3d 113 (2d Cir. 1997), cert. denied, 525 U.S. 814
(1998).

     In this case, it is clear that Winters is being sued
for actions taken in his role as hearing officer.  There
is no claim that his alleged misconduct was outside of
that capacity, or that he lacked jurisdiction over the
proceeding.  Accordingly, he is entitled to immunity.  As
the record of this case demonstrates, Winters' decisions
may be appealed through the state courts.[4]   Those

---

[4] Similarly, Assur's allegation of a conflict of interest could be
addressed either through a recusal request or some form of attorney
disciplinary process.

decisions may not, however, subject him to personal liability.

Finally, defendant Porter is being sued under a theory of *respondeat superior*.  As Assur explains in one of her filings, "[t]he Director of the OPR, in official and individual capacity, is liable in a suit for all of the violations of law by the OPR officials, for all times indicated in Plaintiff's complaint."  (Paper 30 at 6).  With respect to Assur's federal law claims, "[a] supervisor may not be held liable under section 1983 merely because [her] subordinate committed a constitutional tort."  Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Furthermore, with respect to Assur's claims generally, a supervisor cannot be liable on a theory of *respondeat superior* without underlying liability on the part of the employee.  See, e.g., Shapiro v. Kronfeld, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004).  Consequently, if the Court dismisses the claims against Adrian, the claims against Porter should also be dismissed.

All claims against the State defendants in their official capacities are barred by the Eleventh Amendment

and Vermont law.  In accordance with the doctrine of
state sovereign immunity, the Eleventh Amendment bars
suits by private citizens against a state or its agencies
in federal court unless the state has waived its immunity
or Congress has properly abrogated that immunity.  See
Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89,
98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55
(1996).  The protection of the Eleventh Amendment also
extends to suits for monetary damages against state
officers sued in their official capacities.  See Brandon
v. Holt, 469 U.S. 464, 471 (1985).

In this case, Assur's complaint is comprised of
state law claims and federal claims brought pursuant to
42 U.S.C. §§ 1983 and 1985.  There is no indication that
Congress intended to abrogate state sovereign immunity
under either 42 U.S.C. § 1983 or § 1985, and the Supreme
Court has specifically held that Congress did not intend
to override well-established immunities such as state
sovereign immunity when it enacted § 1983.  See Will v.
Michigan Dept. of State Police, 491 U.S. 58, 67 (1989);
see also Sandoval v. Dep't of Motor Vehicles, 333 F.
Supp. 2d 40, 43-44 (E.D.N.Y. 2004) (State and its

25

agencies are not "persons" under § 1985).  It is equally clear that Vermont has not waived its sovereign immunity under § 1983, § 1985 or the state whistleblower law, 12 V.S.A. § 507(b)(1).  See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived).  With respect to Assur's tort claims, the State's limited waiver of immunity places exclusive jurisdiction in the state superior court.  12 V.S.A. § 5601 (a).

Under the Ex parte Young doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks . . . prospective injunctive relief."  Seminole Tribe, 517 U.S. 44, 73 (1996).  Here, Assur seeks an injunction on any further defamatory allegations.  Under Vermont law, however, allegations of tortious conduct by state officials must generally be brought against the State in state court.  12 V.S.A. § 5601(a); see Amy's Enterprises v. Sorrell, 174 Vt. 623, 624 (2002) (slander claim against Vermont official covered by Vermont Tort Claims Act).  Accordingly, this Court has no jurisdiction to hear such a claim for injunctive relief.  I therefore recommend that all claims

26

against the State defendants in their individual and official capacities be DISMISSED.[5]

## IV.   Assur's Motion for Costs of Service

Also pending before the Court is Assur's motion for reimbursement of her costs of service on defendants Palmer, Theken and CVMC.  Pursuant to Rule 4(d), Assur sent requests for waivers of service of a summons to counsel for the hospital defendants on December 4, 2007.  Fed. R. Civ. P. 4(d).  On January 3, 2007, counsel accepted service for defendants Spring and Mason, and informs the Court that he was trying to reach defendants Palmer and Theken but that "[t]here were delays associated with the Holiday season."  On January 8, 2007, the Clerk's Office issued summonses for personal service on the remaining defendants.  Defendants Theken and Palmer were personally served on January 9th and 16th, respectively.

Rule 4(d)(2)(F) states that a plaintiff requesting a waiver of service of a summons "shall allow the defendant a reasonable time to return the waiver, which shall be at

---

[5]  Because I am recommending that the Court grant the State defendants' motion to dismiss, I further recommend that the Court not reach the State defendants' abstention argument.  The Court takes no position at this time on the question of whether abstention may be appropriate with respect to the remaining defendants in the case.

least 30 days from the date on which the request was sent
. . . ." Fed. R. Civ. P. 4(d)(2)(F). Here, counsel
waived service on behalf of two defendants within 30
days, thus implying that waivers on behalf of other
defendants might be forthcoming. Given the receipt of
these waivers, and considering the availability of
parties during the holiday season, it would have been
reasonable to allow more than 30 days for receipt of the
remaining waivers.

Indeed, Rule 4 does not set a deadline for a
defendant's response, instead establishing a minimum
guideline of "at least 30 days." Id. Under the
circumstances presented here, Assur's efforts to have the
remaining defendants personally served within a few days
after the 30-day period expired does not entitle her to
the costs of service. The motion for reimbursement of
costs is, therefore, DENIED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that
the hospital defendants' motion for judgment on the
pleadings (Paper 13) be DENIED without prejudice. I
further recommend that the State defendants' motion to

dismiss (Paper 20) be GRANTED, and that their motion to abstain (Paper 23) be DENIED as moot.  Assur's motion for reimbursement of costs (Paper 35) is DENIED.

Dated at Burlington, in the District of Vermont, this 10th day of August, 2007.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3 & 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).